## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE CO., | |
| *Plaintiff,* | CIVIL ACTION NO. 21-5397 |
| v. | |
| NEWTOWN SQUARE, LLC, | |
| *Defendant,* | |
| NEWTOWN SQUARE, LLC, | |
| *Third Party Plaintiff,* | |
| v. | |
| BTC INSURANCE SERVICES, LLC, KISH NORTH, and WORLDWIDE FACILITIES, LLC, | |
| *Third Party Defendants.* | |

**Pappert, J.**                                                                                   April 18, 2024

### MEMORANDUM

This action began with National Fire and Marine Insurance Company seeking a declaratory judgment that it did not owe its insured, Newtown Square, LLC, coverage for a water loss that occurred at Newtown's property at 60 Farrier Lane in Newtown Square. In response, Newtown filed an answer and counterclaims against National Fire, and later, Newtown filed an amended joinder complaint naming insurance agents and brokers Kish North, BTC Insurance Services, LLC, and Worldwide Facilities, LLC, as third-party defendants. Newtown has settled with National Fire, North and BTC. All that remains is Newtown's negligence claim against Worldwide.

Both Newtown and Worldwide filed motions for summary judgment on the negligence claim. At the same time, both moved to exclude the other's experts. Worldwide sought to exclude Newtown's experts, Mary LaPorte and Meghan Chorin, while Newtown sought to exclude Worldwide's expert, Burl Daniel. Both LaPorte and Daniel are insurance industry experts who propose to opine on the professional standard of care applicable to Worldwide, while Chorin was the listing agent for the 60 Farrier Lane property and will discuss the probable rental value of the home. The Court held oral argument Tuesday on all pending motions. (ECF No. 108). After ruling from the bench and explaining its reasoning on the motions for summary judgment, (ECF No. 109), the Court now denies both motions to exclude the experts for the reasons that follow.

I

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[1]

---

[1] In December 2023, Rule 702 was amended. *See* Fed. R. Evid. 702, Advisory Comm. Notes, 2023 Amendments. The amendment clarified and emphasized (1) "that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule," and (2) that "each

2

Rule 702 puts the Court in a "gatekeeper" role, requiring the Court to ensure the expert testimony is relevant and reliable.  *See David v. Black & Decker (US) Inc.*, 629 F. Supp.2d 511, 514 (W.D. Pa. 2009) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).  The Third Circuit has said that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit."  *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741–43 (3d Cir. 1994)).  It further explained:

> Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert. Secondly, the testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity. Finally, Rule 702 requires that the expert testimony must fit the issues of the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that Rule 702's helpfulness standard requires a valid scientific connection to the pertinent injury as a precondition to admissibility.

*Id.*  The party offering the expert testimony carries the burden of establishing that it meets these three requirements by a preponderance of the evidence.  *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999).  "If the expert meets the liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility."  *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997).  Furthermore, the Rules of Evidence embody a strong preference for admitting evidence that has the potential to assist the trier of fact, and Rule 702 has a liberal policy of

---

expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology."  *Id.*

admissibility.  *Id.* at 806.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky yet admissible evidence."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993).

## II

Worldwide moves to exclude LaPorte for numerous reasons including: (1) that she is not giving an opinion about Worldwide's duties but rather "vague commentary" about what Worldwide could have done; (2) that her report is not reliable because it fails to discuss a "key item," namely, the Brokerage Agreement between Worldwide and BTC; (3) that her opinion that Worldwide should not have accepted an incorrect application is not supported by industry standards and involves an "erroneous" review of the facts; and (4) that she made multiple concessions in her deposition, such as noting Worldwide did not have a duty to highlight in the insurance policy quote sent to Newtown the option to buy back sprinkler leakage coverage, and that Worldwide had no obligation to guide North despite his inexperience.  (Mot. To Exclude Expert Opinions, ECF No. 73-1).

## A

As an initial matter, LaPorte is qualified.  She has worked in the insurance industry for over thirty years, having held positions such as a surplus lines manager, commercial lines agent/producer, licensed personal lines agent/producer and claims manager.  She holds various professional designations such as the CPCU (Chartered Property and Casualty Underwriter), CIC (Certified Insurance Counselor) and CPIA

(Certified Professional Insurance Agent).  (Laporte Report, ECF No. 73-3, at 2–4).[2]  She has also worked as a consultant, written articles on a variety of insurance topics, held a position on the national faculty for CIC and teaches CPIA classes in multiple states. (*Id.*)

B

Her opinions are reliable and supported by adequate grounds.  *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 732 (citing *Daubert*, 509 U.S. at 590).  They are based on her applying decades of experience and skills to this record.  *See* (Laporte Report, ECF No. 73-3, at 2–3).  LaPorte's method may not be "a formal, testable" one, but it is one commonly used and accepted by courts.  *See Elgert v. Siemens Industry, Inc.*, No. 17-1985, 2019 WL 1294819, at *5–6 (E.D. Pa. Mar. 20, 2019) (*United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)).  Indeed, some courts have said that when examining expert testimony that is based on practical experience, "the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable," because the reliability of testimony from a practical experience expert "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it."  *Id.*  LaPorte explains why she believes Worldwide did not follow industry standards and practices, and she provides citations to the record that provided the basis for her assertions.  (LaPorte Report, ECF No. 73-3, at 36).  To the extent Worldwide disagrees with LaPorte's report and conclusions, or feels she contradicted herself during her deposition, these contentions are fodder for cross-examination, and go to her credibility,

---

[2]     All page numbers are referring to the ECF number unless otherwise stated.

not the admissibility of her report.[3]  *See Altieri v. State Farm Fire and Cas. Co.*, No. 09-2342, 2011 WL 1883054, at *3 (E.D. Pa. May 17, 2011).

## C

Finally, LaPorte's opinions will assist the trier of fact and are relevant to this case.  Newtown contends that Worldwide was negligent insofar as it did not follow directions or send Newtown the insurance policy until after the loss occurred, and LaPorte touches on these issues.  She opines that Worldwide should have noticed a "red flag" when North advised Worldwide that the property was vacant, an assertion that contradicted the insurance application Worldwide received.  (LaPorte Report, ECF No. 73-3, at 12).  LaPorte further contends that Worldwide should have requested a new application to clarify any confusion and avoid a mistake.  (LaPorte Report, ECF No. 73-3, at 30).  Additionally, LaPorte is critical of the fact that Worldwide failed to deliver Newtown's policy to North for over five months.  (LaPorte Rebuttal, ECF No. 75-4, at 11).  These views are relevant to the thrust of Newtown's claims—that Worldwide failed to follow directions and was negligent in failing to transmit the policy to North.

## III

Next, Worldwide contends that Meghan Chorin's report, which estimates the probable rental value of 60 Farrier Lane, should be excluded because it fails to meet the requirements of an appraisal, broker price option or comparative market analysis. (Mot. To Exclude Expert Opinions, ECF No. 73-1, at 19–20).  In response, Newtown

---

[3]     Worldwide's contention that LaPorte's opinions should be excluded because she does not assign Worldwide certain legal duties is unpersuasive.  Experts cannot offer conclusions as to whether a party's conduct comports with the law.  *See, e.g., Comcast Cable Communs., LLC v. Sprint Communs. Co., LP,* 203 F. Supp. 3d 499, 546 (E.D. Pa. 2016).  Whether a duty exists is a question of law for the court to decide.  *Miller v. Amazon.com Servs.*, 543 F. Supp.3d 80, 86 (E.D. Pa. 2021).

says that Chorin is not offering an appraisal or a broker price option and acknowledges that Chorin's report does not fully comply with the statutory requirements of a comparative market analysis.  (Resp. To Mot. To Exclude Expert Opinions, ECF No. 94, at 19–20).  Still, Newtown contends that Chorin is qualified to offer an estimate of the probable rental value of the home given she is an experienced real estate broker and was the listing agent for the property.  (*Id.*)

Chorin is qualified to provide such an opinion.  She has nineteen years of experience as a broker dealing specifically with luxury residential properties along the Main Line and, again, was the listing agent for the property.  (Chorin Report, ECF No. 73-5, at 1); (Resp. To Mot. To Exclude Expert Opinions, ECF No. 94, at 20).

Chorin's report is reliable and fits this case.  Her analysis is based on other high-end rentals in the area, particularly the property at 342 Grays Lane in Haverford, and considered pertinent post-COVID market trends.  (Chorin Report, ECF No. 73-5, at 1–2).  A jury could understand this methodology and it would be helpful to determine possible damages.  As such, Chorin's opinions fall squarely within Rule 702's "liberal policy of admissibility."  *Pineda*, 520 F.3d at 243.  To the extent Worldwide views Chorin's report as "shaky" or questions her adherence to certain formalities in preparing her report, it can address those issues through "vigorous cross-examination."  *Daubert*, 509 U.S. at 595.

## IV

Finally, Newtown moves to exclude Worldwide's rebuttal expert, Burl Daniel, contending: (1) Daniel's opinions are not reliable insofar as they are based on an

7

inaccurate recitation of the facts, such as Newtown's[4] experience in similar transactions; (2) Daniel's view that Worldwide's failure to deliver the policy was immaterial is unreliable and goes to the ultimate issue of the case; (3) Daniel's opinion that Worldwide fulfilled its duty is unreliable because it contradicts the authority he cites; (4) Daniel's opinion that if the policy had been written on a standard form rather than a vacancy form there still would not have been coverage is not reliable and contradicts language in his own report; (5) Daniel's opinions are not reliable because he has been an expert—and not actively working in the insurance industry—for the last twenty years; and (6) Daniel did not cite any data for his assertion that the surplus lines market was in a downturn at the time Newtown was seeking coverage for the Farrier Lane property.  (Mot. To Exclude Burl Daniel, ECF No. 82-1); (Reply To Resp. To Mot. To Exclude Burl Daniel, ECF No. 101).

A

Like LaPorte, Daniel is qualified.  He has over forty-seven years of experience in the insurance industry, has been an adjunct professor of insurance at multiple colleges and maintains professional designations such the CRM (Certified Risk Manager), CIC (Certified Insurance Counselor) and CPCU (Chartered Property Casualty Underwriter). (Daniel Qualifications, ECF No. 86-5, at 2–3); (Daniel Report, ECF No. 93-2, at 18). Though Newtown questions his qualifications given he has been "off the street 20 years," (Daniel Dep. 54:7–8, ECF No. 101-2), this is grounds for cross-examination.

---

[4]     The Court is using Newtown interchangeably with Cody Faller, the managing member of Newtown, throughout.

B

His opinions are reliable.  Again, the test for reliability is not whether a particular opinion has the best foundation or is correct, but if it is centered on valid reasoning, reliable methodology and sufficient standards.  *Equinox Properties, LLC v. Harford Mut. Ins. Co.*, No. 21-15929, 2023 WL 5447279, at *4 (D.N.J. Aug. 24, 2023).  Daniel reviewed the record and gave opinions based on his extensive experience in the insurance industry.  (Daniel Report, ECF No. 92-17, at 1).  "Cases where courts have allowed testimony based on the experience of the expert often involve testimony as to custom and practice that has been acquired via such experience." *Equinox Properties, LLC*, 2023 WL 5447279, at *4.  While Newtown may contend his report is at odds with other industry literature or sources or overemphasizes Newtown's level of sophistication with the insurance industry, this speaks to the weight and credibility of Daniel's opinion and can be addressed in cross-examination.

Additionally, Daniel did not impermissibly speak to an ultimate issue when he opined that Worldwide's failure to forward the completed insurance policy was "immaterial."  (Mot. To. Exclude Burl Daniel, ECF No. 82-1, at 5).  As an initial matter, an opinion is not automatically objectionable because it touches on the ultimate issue of the case.  Fed. R. Evid. 704.  Nevertheless, the expert is prohibited from giving a legal opinion. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006).  When a case involves customs or practices of a particular industry, "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." *Id.* at 218.  Here, Daniel is not

giving a legal opinion; rather, he is contending that if Newtown did not object to the sprinkler leakage exclusion when it read the insurance quote, it is doubtful it would have done so after sifting through the full policy. (Daniel Report, ECF No. 93-2, at 11). Ultimately, the trier of fact can determine if Newtown was aware of the scope of policy coverage. Daniel's testimony is designed to assist the jurors in making that determination.

Newtown also moves to exclude Daniel's opinion that "if the policy had been written on a standard form rather than a vacancy form there still would have not been coverage." (Mot. To Exclude Burl Daniel, ECF No. 82-1, at 8). This too is more appropriately addressed through cross-examination. Again, the test for reliability is not whether a particular opinion has the best foundation or is correct, but if it is centered on valid reasoning, reliable methodology and sufficient standards. *Equinox Properties,* 2023 WL 5447279, at *4. In this instance, Daniel is drawing from his experience in the insurance industry and understanding of vacancy provisions to draw a conclusion.

Newtown further argues that Daniel did not cite any data to support his assertion that there was a soft market for a house like 60 Farrier Lane at the time Newtown sought coverage. However, for the second quarter of 2021, he did cite a source. *See* (Daniel Report, ECF No. 92-17, at 9). Again, Newtown can any address any alleged inadequacies in Daniel's analysis through cross-examination or by presenting contrary evidence. *See, e.g., Cirba Inc. v. VMware, Inc.,* No. 19-742, 2023 WL 3151853, at *9 (D. Del. Apr. 18, 2023).

C

Finally, Daniel's opinion fits this case.  He rebuts many of LaPorte's assertions, including her position that standard industry practices would have required Worldwide to obtain a corrected application from Newtown reflecting the property was vacant. (Daniel Report, ECF No. 93-2, at 14).  He further opined about the significance of Worldwide's failure to transmit the insurance policy to North, another key issue.  (*Id.* at 11).  Because Daniel's opinion would assist the trier of fact in understanding evidence and determining facts in issue, Fed. R. Evid. 702(a), Newtown's motion to exclude is denied.

An appropriate Order follows.


BY THE COURT:



*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.